**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**ERIE INSURANCE PROPERTY & CASUALTY
COMPANY, INC.**,

        Plaintiff,

      v.                                              **Civil Action No. 5:12-CV-81**
                                                             (Judge Bailey)
**VIEWPOINT, INC.**,

        Defendant.

**ORDER DENYING MOTION TO DISMISS**

I.     Introduction

Pending before this Court is defendant Viewpoint, Inc.'s Motion to Dismiss [Doc. 7], which was filed on August 20, 2012. The plaintiff filed its Response to the Motion to Dismiss [Doc. 9] on September 4, 2012. The defendant filed its Reply [Doc. 10] on September 11, 2012. Having been fully briefed, the Motion is ripe for adjudication. For the reasons stated below, the Motion is **DENIED**.

II.    Factual and Procedural History

This declaratory judgment action was filed in this Court on June 8, 2012, seeking a declaration by Erie Insurance Property & Casualty Company, Inc. ("Erie"), the defendant's insurer under a commercial general liability policy, that it has no duty to either defend or indemnify the defendant in an underlying action pending in the Circuit Court of Hancock County, West Virginia. On February 9, 2011, the plaintiff in the underlying action

1

commenced suit in the Circuit Court of Hancock County alleging, *inter alia*, that defendant Viewpoint and other defendants conspired to deprive her of money, identified as a "sign-on bonus and proper royalties" through a "common scheme or plan . . .."

At the relevant times, Viewpoint was insured under a Commercial General Liability Policy issued by Erie (the "Erie Policy"). Viewpoint asserts it has requested indemnification and defense for the claims asserted in the underlying State Court action under that policy; however, Erie has denied coverage. Erie states that the issue before this Court is "whether the Erie Policy provides any benefits, coverage or duty to defend or indemnify Viewpoint against the asserted maliciously, willfully, wantonly, knowingly and fraudulently conspiratorial claims and attempted label change." [Doc. 9 at 4].

In its Complaint for Declaratory Judgment [Doc. 1], Erie seeks declaratory judgment to determine coverage in the action pending before the Circuit Court of Hancock County, West Virginia. Viewpoint moves this Court to dismiss this action for failure to state a claim.

III. Applicable Law

As a starting point, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." **Colorado River Water Conser. Dist. v. United States**, 424 U.S. 800, 817 (1976). The **Colorado River** Court noted that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction," *Id.* at 817, and that a district court may decline to exercise its jurisdiction only under "exceptional circumstances." *Id.* at 813. However, since 1995, it has been clear that a district court need not be faced with "exceptional circumstances" to stay or dismiss duplicative litigation in the declaratory judgment context. **Wilton v.**

2

*Seven Falls Co.*, 515 U.S. 277 (1995); *Gatewood Lumber, Inc. v. Travelers Indemnity Co.*, 898 F.Supp. 364 (S.D. W.Va. 1995). The *Wilton* Court offered the following explanation:

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

*Wilton*, 515 U.S. at 288 (footnote omitted).

Since the *Wilton* decision, the Fourth Circuit has articulated four factors for district courts to consider "[t]o determine whether to proceed with a federal declaratory judgment action when a parallel state court action is pending":

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state court could resolve the issues more efficiently than the federal court; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal court; and (4) whether the federal action is mere procedural fencing in the sense that the action is merely the product of forum shopping.

*Great Am. Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006) (citing *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994).

IV. Analysis

    A. *Quarles* Criteria

With regard to applying the *Quarles* criteria in cases involving insurance policy interpretation, the Fourth Circuit noted the following:

> [i]t is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism. The declaratory judgment action is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted. The declaratory judgment action allows the uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings.

*United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998).

In *Kapiloff*, the insurance company filed a declaratory judgment action in federal court. In response, the insureds filed a state court action against their insurance company and insurance brokers. The state action alleged that the insurer breached the insurance policy, and the insurance brokers were negligent in procuring insurance coverage for the insureds. Though the *Kapiloff* Court concluded that the *Quarles* criteria were met, it emphasized the prevailing importance of the *Nautilus* factors, when there is a pending state action:

> [a]lthough the [insureds] brought their state action after [the insurance company] filed its declaratory judgment action, at the time of the district court's decision not to abstain, the state action was pending. The existence of this state action therefore animates the issues of federalism and comity and counsels careful examination of the factors identified in *Nautilus*.

*Kapiloff*, 155 F.3d at 494.

Like in *Kapiloff*, there can be no question that a declaratory judgment from this Court will serve a useful purpose in clarifying and settling the coverage questions at issue. In addition, a declaratory judgment from this Court as to whether Erie must defend and indemnify Viewpoint will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the instant proceeding. However, because the Court is cognizant of the underlying state proceeding, it will carefully weigh each *Nautilus* factor outlined below.

### B. *Nautilus* Factors

#### 1. West Virginia's Interest

Erie argues that the State of West Virginia does not have a particularly strong interest in having the issues raised in this federal declaratory action decided in state court because there exists extensive state case law on the issue to guide this Court, and the coverage question does not involve novel, unsettled, difficult, or problematic issues. This Court agrees. That the issues, whether the policy provides coverage and whether the policy requires Erie to defend and indemnify, will be controlled by West Virginia state law is not dispositive. In *Nautilus*, where all of the issues of insurance coverage were governed by the state substantive law, the Court made the following observation:

> [that state law governs] alone provides no reason for declining to exercise jurisdiction. In analogous situations in which a federal court possesses discretionary power to abstain from deciding state-law questions otherwise properly within its jurisdiction, that discretion may be exercised only when the questions of state law involved are difficult, complex or unsettled.

*Nautilus*, 15 F.3d at 378.

Viewpoint has made no specifically-supported argument that the issues before this Court are difficult, complex, or unsettled. In fact, as the United States District Court for the Southern District of West Virginia once indicated, "West Virginia's Supreme Court and the courts of her sister states have provided sufficient guidance in the broader areas of contract interpretation and of the applicability of insurance policy exclusions generally, including whether those exclusions comport with public policy." *First Financial Ins. Co. v. Crossroads Lounge, Inc.*, 140 F.Supp.2d 686, 696 (S.D. W.Va. 2001). Thus, this Court concludes that the State of West Virginia's interest in having these issues decided in West Virginia state court "is not sufficiently compelling to weigh against the exercise of federal jurisdiction." *Nautilus*, 15 F.3d at 378.

### 2. Efficiency

When addressing the efficiency factor, a district court should focus on "'whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding[s]' that are already 'pending in the state court[s].'" *Nautilus*, 15 F.3d at 378 (quoting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942)). In the Fourth Circuit, this question requires a "careful inquiry into 'the scope of the pending state court proceeding' including such matters as 'whether the claims of all parties in interest [to the federal proceeding] can satisfactorily be adjudicated in [the state proceeding].'" *Nautilus*, 15 F.3d at 378-379 (quoting *Brillhart*, 316 U.S. at 495).

Viewpoint argues that the state court is the better forum because "(1) [it] has had this case on its docket for about 1 and ½ years; (2) a good bit of discovery has taken place; and (3) Erie had already injected itself – and sought the same relief it now seeks – in that very

6

same State Court action before engaging in the forum shopping trip . . .." ([Doc. 10] at 3). This Court questions the extent of this familiarity.

Though a state court's familiarity with factual and legal issues has been weighed in favor of a federal court's abstention, *see* **Old Republic Ins. Co. v. Massey Energy Co.**, 2008 WL 1899901 (S.D. W.Va. April 25, 2008), here, the state court's familiarity is questionable. Presence on a state court's docket does not necessarily equate to familiarity sufficient to find that a controversy can be better settled in the state action. *See* **Admiral Ins. Co. v. Independence Coal Co., Inc.**, 2007 WL 1575011 (S.D. W.Va. May 30, 2007). While the state action has been pending for over a year, Viewpoint merely asserts "a good bit of discovery has taken place." ([Doc. 10] at 3). Additionally, the underlying complaint has been amended as recently as May of 2012. Moreover, as Erie argues in its Response, any familiarity that the state court has with the legal issues presented by the state law claims and the third party declaratory judgment action provides no familiarity with the legal issues presented in the instant declaratory judgment action. Specifically, the state court has yet to consider any coverage issues with regard to the Erie policy. Finally, that some discovery has already been conducted in state court does not weaken, but actually strengthens, this Court's efficiency in applying those facts that have been discovered. Thus, this Court concludes that its moving forward to exercise jurisdiction over the instant declaratory judgment action will not necessarily result in inefficiency as between the state and federal action.

### 3. Entanglement

Regarding the third factor, it is important to determine whether the state and federal

actions present "overlapping issues of fact or law." **Nautilus**, 15 F.3d at 377 (quoting **Mitcheson v. Harris**, 955 F.2d 235, 239 (4th Cir. 1992)). More specifically, when there are state and federal actions seeking a declaration of coverage, as here, a district court must consider whether "a declaration of the parties' rights in [the federal] action would necessitate resolution of the same questions of fact and law [pending] before the state court." **Nautilus Ins. Co. v. Maynard**, 2007 WL 2963774 (S.D. W.Va. October 9, 2007). As alluded to in the discussion of efficiency, the instant declaratory action presents distinct coverage issues not directly before the state court. Freedom of contract allows each insurance agreement to be unique. Thus, though there are common rules of interpretation, each insurance contract may include provisions requiring distinct interpretation. The instant declaratory action seeks a determination of whether Erie owes the duties of defense or indemnification under the policy. Thus, the issues of law and fact presented by the state and federal actions are not sufficiently "overlapping" as to result in unnecessary entanglement between the state and federal court systems. See **Nautilus**, 15 F.3d at 377.

### 4. Procedural Fencing

Finally, the Court finds no indication that the instant declaratory judgment action is being used as a device for "'procedural fencing,'" i.e., "'to provide another forum in a race for res judicata'" or "'to achiev[e] a federal hearing in a case otherwise not removable.'" **Nautilus**, 15 F.3d at 377 (citation omitted). In analyzing this factor, the Fourth Circuit provides that a district court must consider whether "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first

8

in a more favorable forum . . ..*" Id.* at 380. There is no indication that Erie filed this action as a method of procedural fencing. Again, the issues presented by the instant action are not already pending before the state court. Moreover, as the court in ***Allstate Ins. Co. v. DiGiorgi***, 991 F.Supp. 767, 770 (S.D. W.Va. 1998) noted, "it is not uncommon for insurers to file declaratory judgment actions to determine efficiently their duties under a policy, separate from any other claims alleged by the insured persons or tort victims."

Therefore, applying the four **Nautilus** factors to the instant case, the Court is persuaded, in its discretion, to exercise jurisdiction over the instant declaratory judgment action. After all, even assuming that the **Nautilus** factors weighed in favor of abstention, "[t]he concerns of the **Nautilus** factors for federalism, efficiency and comity do not outweigh the **Quarles** [criteria] which favor the exercise of federal jurisdiction in declaratory actions." ***DiGiorgi***, 991 F.Supp. at 770.

## Conclusion

For the reasons stated above, the defendant's Motion to Dismiss [**Doc. 7**] is **DENIED**. Accordingly, this Court will exercise its jurisdiction over the subject Complaint for Declaratory Judgment.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: October 5, 2012.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE