**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**ERIE INSURANCE PROPERTY &
CASUALTY COMPANY, INC.**,

        Plaintiff,

        v.                                      **Civil Action No. 5:12-CV-81**
                                                           Judge Bailey

**VIEWPOINT, INC.**,

        Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pending before this Court are the Motion of Defendant for Summary Judgment (Doc. 19) and Plaintiff's Motion for Summary Judgment (Doc. 21). Both Motions have been fully briefed and are ripe for decision.

This is a declaratory judgment action filed by the insurer, Erie Insurance Property & Casualty Company, Inc. ("Erie") seeking a determination as to whether Erie has an obligation to indemnify and/or defend defendant Viewpoint, Inc. ("Viewpoint") in an action pending in the Circuit Court of Hancock County, West Virginia, styled *Patricia Cotherman v. EQT Production Company, Equitrans, L.P., Thomas A. Milstead, Jr., and Viewpoint, Inc.*, Hancock County Case No. 11-C-34 W.

### The Underlying Case

The pertinent factual allegations of the Second Amended Complaint (Doc. 7-2) include:

1

1. That in 1963, Ms. Cotherman's predecessor in title entered into a five year oil and gas lease with Equitable Gas Co., believed to be the predecessor to EQT Corporation;

2. That the 1963 oil and gas lease was void, inasmuch as there had been no gas production nor payment for gas storage since 1992 or earlier;

3. That on or about July 20, 2010, defendant Milstead visited Ms. Cotherman, a 71 year old widow, at her residence in New Cumberland, West Virginia, and fraudulently induced her to sign a document entitled "Amendment and Ratification of Oil and Gas Lease" ("Amendment and Ratification").

4. That Milstead held himself out to be a landman and employee or agent of EQT and/or Equitrans, L.P. Milstead is believed to be an employee of defendant Viewpoint.

5. That Milstead was under the direct supervision and control of Rodney Webber of Viewpoint.

6. Ms. Cotherman was not represented by counsel and was paid no consideration for the Amendment and Ratification.

7. The Amendment and Ratification stated that: (1) the 1963 lease was in full force and effect; (2) added a provision allowing the pooling or unitizing the leased acreage; and (3) provided that all royalties and payments were paid.

8. That Milstead told Ms. Cotherman that the language in the document could not be changed under any circumstances, even if she consulted with an attorney.

9. That the prevailing sign-on bonus for a new lease would have been at least $215,000.00. The royalty for a new lease would have been at least 15% rather than the 12.5% in the 1963 lease.

10. After the action was filed, Ms. Cotherman received a check for back royalties or other payments. This check was sent to her personally rather than counsel.

The Cotherman Second Amended Complaint (Doc. 7-2) alleges seven causes for relief:

I. Declaratory relief - voiding the lease.

II. Civil conspiracy and punitive damages - alleging a common plan or scheme among the defendants to deprive the plaintiff of a sign-on bonus and proper royalties. This Count alleges that the defendants acted maliciously, willfully, and wantonly.

III. Tort of outrage - alleging that sending the check for overdue royalty and lease payments to Ms. Cotherman rather than her counsel constitutes the tort of outrage. This Count also alleges that the conduct was malicious, willful, and wanton.

IV. Unlawful holding-over - alleging that the defendants acted with malicious, willful, and wanton intent.

V. Slander of title - alleging that the recording of the Ratification and Amendment slanders the plaintiff's title. This Count also alleges that the conduct was malicious, willful, and wanton.

VI. Breach of implied covenant to diligently develop, produce and market - seeking damages.

VII. Negligence - alleging that Milstead negligently: (1) told Ms. Cotherman that he represented EQT; (2) used a business card that had the term EQT on four separate places, including EQT Contract Landman and EQT Production; (3) used EQT's Bridgeport, West Virginia address; and (4) sent an email that said "Contract Landman Representing EQT." This Count also alleges that Milstead "negligently" sent an email indicating there

was a proposed well, when in fact there was no proposed well.

**Applicable Law**

1. "'Language in an insurance policy should be given its plain, ordinary meaning.' Syllabus Point 1, **Soliva v. Shand, Morahan & Co., Inc.,** 176 W.Va. 430, 345 S.E.2d 33 (1986), *overruled, in part, on other grounds by* **National Mut. Ins. Co. v. McMahon & Sons,** 177 W.Va. 734, 356 S.E.2d 488 (1987)." Syllabus Point 1, **Mylan Labs Inc. v. Amer. Motorists Ins. Co.**, 226 W.Va. 307, 700 S.E.2d 518 (2010); **Nationwide Prop. & Cas. v. Comer**, 559 F.Supp.2d 685, 690 (S.D. W.Va. 2008).

2. "'Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended.' Syllabus, **Keffer v. Prudential Ins. Co.,** 153 W.Va. 813, 172 S.E.2d 714 (1970)." Syllabus Point 2, **Mylan Labs Inc.**; **Comer**, 559 F.Supp.2d at 690.

3. "'Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.' Syllabus Point 1, **Prete v. Merchants Property Ins. Co.,** 159 W.Va. 508, 223 S.E.2d 441 (1976)." Syllabus Point 3, **Mylan Labs Inc. v. Amer. Motorists Ins. Co.**, 226 W.Va. 307, 700 S.E.2d 518 (2010).

4. "'The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court.' Syllabus Point 1, **Berkeley Co. Pub. Serv. v. Vitro Corp.,** 152 W.Va. 252, 162 S.E.2d 189 (1968)." Syllabus Point 4, **Mylan Labs Inc.**

5. "'It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.' Syllabus Point 4, ***National Mut. Ins. Co. v. McMahon & Sons,*** 177 W.Va. 734, 356 S.E.2d 488 (1987), *overruled on other grounds by **Potesta v. U.S. Fidelity & Guaranty Co.,*** 202 W.Va. 308, 504 S.E.2d 135 (1998)." Syllabus Point 5, ***Mylan Labs Inc.***; ***Comer***, 559 F.Supp.2d at 690.

6. "'[I]ncluded in the consideration of whether the insurer has a duty to defend is whether the allegations in the complaint ... are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies.' Syllabus Point 3, in part, ***Bruceton Bank v. U.S. Fid. and Guar. Ins.,*** 199 W.Va. 548, 486 S.E.2d 19 (1997)." Syllabus Point 6, ***Mylan Labs Inc.***; ***Comer***, 559 F.Supp.2d at 691.

7. Resolution of the duty-to-defend question "requires examination of (1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." ***Fuisz v. Selective Ins. Co. of Am.,*** 61 F.3d 238, 242 (4th Cir. 1995). "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy." ***First Tenn. Bank Nat'l. Ass'n v. St. Paul Fire & Marine Ins. Co.,*** 2012 WL 6634911 (4th Cir. December 21, 2012). *See **West Virginia Fire & Cas. Co. v. Stanley***, 216 W.Va. 40, 56, 602 S.E.2d 483, 499 (2004) (Starcher, J. concurring).

## **Discussion**

In this case, defendant Viewpoint contends that it is entitled to a defense and indemnification under insurance policy Q31 660020 issued by the plaintiff (Doc. 3). This policy contains two coverages which the defendant contends provides the relief it seeks. Coverage A contains the following provisions:

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply…

    b. This insurance applies to "bodily injury" or "property damage" only if:

        1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"…

2. Exclusions

    This insurance does not apply to:

    a. "Bodily injury" or "property damage" expected or intended from the standpoint of the insured…

(Doc. 3).

It is clear from the facts stated in the Complaint (Doc. 3) that the plaintiff contends that the defendants, including Viewpoint, intentionally sought to obtain a renewal and modification of an expired lease in order to avoid paying current market sign-on fees and

royalties. The gist of the entire Complaint is that the defendants acted fraudulently.

Resolution of the duty-to-defend question "requires examination of (1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." ***Fuisz v. Selective Ins. Co. of Am.,*** 61 F.3d 238, 242 (4th Cir. 1995). "This principle is commonly known as the 'eight corners rule' because the determination is made by comparing the 'four corners' of the underlying complaint with the 'four corners' of the policy." ***First Tenn. Bank Nat'l. Ass'n v. St. Paul Fire & Marine Ins. Co.,*** 2012 WL 6634911 (4th Cir. December 21, 2012).

In ***West Virginia Fire & Cas. Co. v. Stanley***, 216 W.Va. 40, 56, 602 S.E.2d 483, 499 (2004), Justice Starcher, in a concurring opinion, stated that "an insurer has a duty to defend an action against its insured only if the claim stated in the underlying complaint could, without amendment, impose liability for risks the policy covers. If the causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by the insurance policy, then the insurance company is relieved of its duties under the policy." (citing ***State Auto. Mut. Ins. Co. v. Alpha Eng'g Servs., Inc.,*** 208 W.Va. 713, 716, 542 S.E.2d 876, 879 (2000)(per curiam).

Justice Starcher also added a citation to Lee R. Russ, 14 *Couch on Insurance* § 200:20 (1999) ("Although there are exceptions, as a general rule, an insurer's duty to defend the insured is determined primarily by the pleadings in the underlying lawsuit, without regard to their veracity, what the parties know or believe the alleged facts to be, the outcome of the underlying case, or the merits of the claim."), and added "[t]his rule has

variously been called the 'four corners' rule (because the insurance company's duty is defined by the allegations in the 'four corners' of the complaint); the 'eight corners' rule (that is, the insurance company or trial court compares the 'four corners' of the complaint with the 'four corners' of the insurance policy); the complaint rule; the exclusive pleading rule; and the scope of the allegations test. *See* Susan Randall, *Redefining the Insurer's Duty to Defend,* 3 Conn.Ins.L.J. 221, 226 (1996/1997)." 216 W.Va. at 55-56, 602 S.E.2d at 498-99.

Coverage A requires that the damages be caused by an occurrence. The defendant contends that the occurrence was the visit to the Cotherman residence on July 20, 2010. "Occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 3, p. 43).

While "accident" is not defined in the policy, the West Virginia Supreme Court has found no ambiguity. "The common and every day meaning of 'accident' is a chance event or event arising from unknown causes." **Amer. Modern Home Ins. Co. v. Corra**, 222 W.Va. 797, 801, 671 S.E.2d 802, 806 (2008), citing **West Virginia Fire & Cas. Co. v. Stanley**, 216 W.Va. 40, 48-49, 602 S.E.2d 483, 491-92 (2004).

The **Corra** Court observed that:

More recently, we addressed the meaning of the term "accident" in an insurance policy in **State Bancorp, Inc. v. U.S. Fidelity and Guar.,** 199 W.Va. 99, 483 S.E.2d 228 (1997). In that case, the insureds' policies obligated the insurers to pay damages because of "bodily injury" or "property damage" which was caused by an "occurrence" during the policy period. 199 W.Va. at 103, 483 S.E.2d at 232. An "occurrence" was defined as "an

8

accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. The question before the Court was whether the allegations in the subject complaint were reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy. The complaint alleged the tort of outrage, breach of contract, the tort of civil conspiracy, and violation of state banking laws.

> Even though the word "accident" was not defined in the policies, we noted that,
>
> Ordinarily, "accident" is defined as "an event occurring by chance or arising from unknown causes[.]" *Webster's New Collegiate Dictionary* 7 (1981). As one court has explained,
>
>> [a]n 'accident' generally means an unusual, unexpected and unforeseen event.... An accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces the damage.... To be an accident, both the means and the result must be unforeseen, involuntary, unexpected, and unusual.
>
> ***Harrison Plumbing & Heating, Inc. v. New Hampshire Insurance Group***, 37 Wash.App. 621, 681 P.2d 875, 878

(1984) (citations omitted). *See also* **Travelers Ins. Companies v. P.C. Quote, Inc.,** 211 Ill.App.3d 719, 156 Ill.Dec. 138, 143, 570 N.E.2d 614, 619 (1991) ("An accident is defined as 'an unforeseen occurrence of untoward or disastrous character' or 'an undesigned sudden or unexpected event.'" (citation omitted)); **Arco Industries Corp. v. American Motorists Ins. Co.,** 448 Mich. 395, 531 N.W.2d 168, 173 (1995).

This Court finds that the damages alleged in this case are not caused by an accident, and, therefore, not caused by an occurrence.

A further basis for not finding coverage under Coverage A is the exclusion for damages "expected or intended from the standpoint of the insured…" The plaintiff in the underlying case has clearly alleged that the result of the execution of the Ratification and Amendment was exactly what the defendants had hoped for - an oil and gas lease without paying current sign-on fees or royalties.

This Court recognizes that the Second Amended Complaint has included a claim for negligence. In **Corra**, *supra,* the West Virginia Supreme Court stated that "[s]imply by framing their claims as arising in negligence, the defendants cannot prevent the operation of 'occurrence' language in a homeowner's policy where it is shown that the homeowner knowingly permitted underage adults to consume alcoholic beverages on his property." 222 W.Va. at 802, 671 S.E.2d at 807.

Syllabus Point 10 of **West Virginia Fire & Cas. Co. v. Stanley**, 216 W.Va. 40, 602

S.E.2d 483 (2004) provides:

> "The inclusion of negligence-type allegations in a complaint that is at its essence a sexual harassment claim will not prevent the operation of an 'intentional acts' exclusion contained in an insurance liability policy which is defined as excluding 'bodily injury' 'expected or intended from the standpoint of the insured.'" Syllabus Point 4, ***Smith v. Animal Urgent Care, Inc.,*** 208 W.Va. 664, 542 S.E.2d 827 (2000).

In ***Smith***, the Court stated:

> Animal Care . . . argues that coverage is required because of the negligence-type allegations involving Animal Care. For the same reasons discussed in section B.1. of this opinion, *infra,* the inclusion of a negligence-oriented theory of recovery against Animal Care does not alter the essence of the claim for purposes of determining the availability of insurance coverage. Sexual harassment, and its inherently non-accidental nature, remain the crux of the case regardless of whether negligence is alleged against Animal Care. *See* ***GATX Leasing Corp. v. National Union Fire Ins. Co.,*** 64 F.3d 1112, 1118 (7th Cir. 1995) (holding that insured's negligence in failing to prevent employee's intentional act does not constitute an "occurrence," reasoning that "'volitional act does not become an accident simply because the insured's negligence prompted the act'") (quoting ***Red Ball Leasing, Inc. v. Hartford Accident & Indem. Co.,*** 915 F.2d 306, 311 (7th Cir. 1990)).

208 W.Va. at 669, 542 S.E.2d at 832.

Furthermore, an examination of the alleged negligent acts contained in Count VII discloses that they are not negligent acts at all. Count VII alleges that Milstead negligently: (1) told Ms. Cotherman that he represented EQT; (2) used a business card that had the term EQT on four separate places, including EQT Contract Landman and EQT Production; (3) used EQT's Bridgeport, West Virginia address and (4) sent an email that said "Contract Landman Representing EQT. To the extent that these representations are untrue, Milstead certainly knew that they were untrue. This is not negligence.

The final act alleged is that Milstead "negligently" sent an email indicating there was a proposed well, when in fact there was no proposed well. Again, this is not negligent.

Accordingly, this Court finds that there is no coverage under Coverage A of the Erie policy. This Court further finds that the allegations in the Complaint are not reasonably susceptible of an interpretation that the claim may be covered Coverage A.

Coverage B of the policy includes the following provisions:

COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

>   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have not duty to defend the insured against any "suit" for "personal or advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result…
>
>   b. This insurance applies to "personal and advertising injury" caused by an

offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. Exclusions

This insurance does not apply to:

a. Knowing Violation of Rights of Another

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

Section V - Definitions

14. "Personal or advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement;" or

g. Infringing upon another's copyright, trade dress or slogan in your advertisement."

17. "Property Damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it, or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Doc. 3).

The only provision of the personal or advertising coverage which arguably applies to this case is "(c) The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor."

However, two of the exclusions from the personal and advertising coverage negate that coverage under the allegations of the Second Amended Complaint. The first exclusion excludes coverage for "personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another . . .."

Inasmuch as the allegations of the Second Amended Complaint contend that the defendants, including Viewpoint, intentionally sought to obtain a renewal and modification of an expired lease in order to avoid paying current market sign-on fees and royalties, any personal and advertising injury, the defendants were acting with the knowledge that the acts in fraudulently obtaining the Amendment and Ratification would violate Ms. Cotherman's rights.

The second exclusion excludes coverage for personal and advertising coverage "arising out of oral or written publication of material, if done by or at the direction of the

insured with knowledge of its falsity." This exclusion would equally apply to any misstatements made to Ms. Cotherman.

Yet another reason that no coverage exists under the "wrongful eviction" coverage is found in the plain language of the definition. This coverage applies to wrongful eviction and wrongful entry "**committed by or on behalf of its owner, landlord or lessor**."

Inasmuch as none of the defendants is the owner, landlord, or lessor of the property, this aspect of Coverage B provides no coverage for Viewpoint.

In ***Decorative Ctr. of Houston v. Employers Cas. Co.***, 833 S.W.2d 257 (Tex. 1992), the insured argued that since the plaintiff in the underlying suit's ability to use its property suffered interference, there was coverage under a similar provision. The Texas court rejected the argument, stating:

> "Occupancy" normally refers to the state of being inhabited. The right of "private occupancy" can only refer to those rights associated with an individual's act of inhabiting the premises, and not to rights associated with the individual's right to use and enjoy the inhabited premises. The [coverage is] meant to cover only landlord-tenant situations, or, if extended, only similar instances where the defendant insured has some superior right of occupancy to that of the plaintiff. Most of the cases from across the country which have interpreted this provision have been either landlord-tenant cases, municipality-property owner cases, or restaurant owner-restaurant-patron cases. All of the cases counsel for appellants cite are landlord-tenant cases or property owner-municipality cases.

833 S.W.2d at 261 (listing cases).

Accordingly, this Court also finds that there is no coverage under Coverage B of the Erie policy. This Court further finds that the allegations in the Complaint are not reasonably susceptible of an interpretation that the claim may be covered Coverage B.

For the reasons stated above, the Motion of Defendant for Summary Judgment (**Doc. 19**) is **DENIED** and Plaintiff's Motion for Summary Judgment (**Doc. 21**) is **GRANTED**. The Clerk is directed to enter judgment in favor of the plaintiff and to dismiss this case from the active docket of this Court.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** March 6, 2013.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE